UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID S. MAC FALL,
STEPHEN B. TORTORA,
STEPHEN J. WARD,
MICHAEL V. YODICE,

                                        Plaintiffs,

                                                            <u>DECISION AND ORDER</u>

                                                            09-CV-6113L

                        v.

THE CITY OF ROCHESTER,
CHIEF DAVID T. MOORE,
GEORGE MARKET, Executive Deputy Chief,
DEPUTY CHIEF MICHAEL SMITH,
SERGEANT RONALD MALLEY,
SERGEANT JOSEPH WUKITCH,
LIEUTENANT HERB BROWN,

                                        Defendants.
_____

**INTRODUCTION**

        Lending credence to the adage that "nothing good happens after midnight," this action has its

roots in an altercation involving two groups of people and several officers of the Rochester (New

York) Police Department ("RPD") in the wee hours on the morning of June 1, 2007.  What might

have seemed at the time like an unexceptional late-night ruckus that would soon be forgotten ended

up garnering considerable attention in the news media, spawning public accusations of "gay bashing"

against the police officers, and generating no less than three lawsuits.

Two of those three suits were brought by five of the civilians who were involved in the June 1 incident, against some of the RPD officers and various other governmental defendants. In this, the third action, four of the RPD officers–David MacFall, Stephen Tortora, Stephen Ward, and Michael Yodice–have sued the City of Rochester ("City"), Police Chief David Moore ("Chief Moore"), and several other individuals, alleging due process and other constitutional claims under 42 U.S.C. § 1983.

Defendants have moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. By Order entered July 6, 2010 ("Rule 12(d) Order"), the Court notified the parties of its intent, pursuant to Rule 12(d), to convert the motion to a motion for summary judgment under Rule 56. Both sides have since filed additional materials in support of their respective positions.

## BACKGROUND

In the early morning hours on June 1, 2007, the plaintiff police officers, while on duty, received a call reporting a fight in the area of South Goodman and Harvard Streets in Rochester. When they arrived on the scene, plaintiffs found two groups of people, who had been involved in an altercation with each other.

Initially, the officers made no arrests, and instead simply separated the combatants and directed them all to go home. According to the complaint in this action, however, the members of one group ("the first group") refused to leave, and began shouting profanities at, and otherwise

verbally abusing, the officers.[1]  Despite repeated orders to disperse, the first group remained in the area, continuing to scream at the officers, until the officers arrested three members of the group and took them into custody.[2]

Within days after the incident, some of the members of the first group began publicly accusing plaintiffs of various forms of misconduct.[3]  In particular, these individuals alleged that not only was the initial assault by the other group motivated by anti-gay bias, based on their actual or perceived sexual orientation, but also that some of the RPD officers had directed anti-gay slurs at them.  They also alleged that the officers had used excessive force against them.

The RPD, through its Professional Standards Section ("PSS"), launched an internal investigation of the incident within a few days after it occurred.  The focus of that investigation was on the officers' actions, to determine if any misconduct had occurred.  In addition, the RPD began a separate investigation to determine whether criminal charges should be brought against any of the participants in the events of June 1.

---

[1] Five of the members of the first group later filed the two other civil rights actions referred to above.  As explained in this Court's decision in one of those cases, *Doe v. Green*, 593 F.Supp.2d 523 (W.D.N.Y. 2009), which dismissed civil rights claims against Monroe County and several other defendants, the plaintiffs in that action alleged that they had been the victims of an unprovoked assault by the second group, and that their confrontation with the officers began when those plaintiffs started insisting that the officers arrest the plaintiffs' alleged attackers.

[2] The arrestees were charged with disorderly conduct.  Complaint ¶¶ 29-33.  According to the complaint, one of them eventually pleaded guilty, one was found guilty after trial, and one accepted a disposition of adjournment in contemplation of dismissal.  Complaint ¶¶ 93, 94, 97.

[3] On June 7, 2007, for example, several members of the group appeared on a local morning radio program, in the course of which they made various allegations about police misconduct during the incident.  Complaint ¶¶ 52-56.

While the complaint goes on at some length about these investigations and related events, the gist of plaintiffs' allegations is that the internal PSS investigation was politically driven, with the intent to scapegoat the police officers, in the hope of drumming up political support among the local gay community for the administration of Rochester Mayor Robert Duffy. Complaint ¶¶ 70, 71. According to plaintiffs, the result of the investigation was virtually preordained. On September 13, 2007, Chief Moore, in an internal email distributed throughout the RPD, announced that the internal investigation had been completed, and that the allegations against the police officers (*i.e.*, the plaintiffs in the instant case) were sustained.

The day after Chief Moore's announcement, all four plaintiffs were suspended with pay. On September 19, 2007, each plaintiff also "received a letter with four (4) charges [against them]." Complaint ¶¶ 80-83. These were not criminal charges, but internal charges of misconduct, such as "use of profane and/or discourteous remarks" and "failure to prepare a C[rime ]R[eport]." *Id.*

On October 17, 2007, the separate criminal investigation was concluded. In a written report issued that day, the three RPD officers who had conducted that investigation found that plaintiffs had not engaged in any misconduct, and that no "gay bashing" had occurred. Complaint ¶ 86. The day after that report was issued, Monroe County District Attorney ("D.A.") Michael Green announced that a grand jury had concluded that there was no basis for any criminal charges against the officers, or any other participants in the June 1 incident. Complaint ¶ 88.

The internal charges against plaintiffs remained pending, however, and on December 11, 2007, the RPD offered each plaintiff a plea deal, under the terms of which each officer would agree

to an unpaid suspension, ranging from five to twenty days, if he would agree to plead guilty to all four charges against him. Complaint ¶¶ 89-92. Each officer refused, and maintained his innocence.

In the meantime, five members of the first group involved in the June 1 incident had filed two lawsuits stemming from that incident. The first, *Lieberman v. City of Rochester*, 07-CV-6316, was filed on June 26, 2007 against the City and other defendants, including the four plaintiffs in this case, alleging that the RPD officers had violated those five individuals' civil rights. The second action, *Doe v. Green*, 07-CV-6538, which was filed on November 1, 2007, was brought against D.A. Green, Monroe County, and other defendants, based on events that occurred after the June 1 incident. The gist of the claims in that action was that Green had made public comments that were prejudicial to those plaintiffs' *Lieberman* lawsuit, and that he had manipulated the grand jury proceedings in order to exonerate the police officers, in an effort to curry political favor with the police union in advance of Green's upcoming reelection campaign.[4]

In April 2008, all four plaintiffs were allowed to return to work at the RPD. Allegedly, no explanation was given for the decision to allow them to return. The internal charges against plaintiffs remained pending, and in fact they remain pending to this day, as will be explained in greater detail below. Complaint ¶ 95. Plaintiffs allege that although they resumed working, they were denied certain assignments and promotions, which has caused them to earn less than they otherwise would have.

---

[4]On January 6, 2009, this Court dismissed the complaint in *Green* on the ground that the plaintiffs had failed to state a claim under § 1983. 593 F.Supp.2d 523. The *Lieberman* action remains pending in this Court.

Plaintiffs filed the complaint in this action on March 9, 2009.  The defendants are the City, Chief Moore, RPD Executive Deputy Chief George Market, RPD Deputy Chief Michael Smith, RPD Sergeants Ronald Malley, Joseph Wukitch, and Daniel Beradini, and RPD Lieutenant Herb Brown.

The first two causes of action allege that defendants violated plaintiffs' rights to due process, although the difference between these two claims is not entirely clear.  The third cause of action alleges a violation of plaintiffs' First Amendment rights, based on defendants' alleged retaliation against plaintiffs for refusing to plead guilty to the administrative charges against them.

The fourth through seventh causes of action assert claims under New York law.  The fourth cause of action asserts a claim for intentional or negligent infliction of emotional distress.  The fifth cause of action asserts a claim against the City and the RPD based on their alleged negligence in hiring, training and supervising the officers who conducted the PSS investigation.  The sixth and seventh causes of action assert claims for defamation, although like the first two causes of action the difference between them is less than clear.[5]

The eighth cause of action asserts a claim "for violation of civil rights under color of law." Complaint at 32.  This appears to be something of a catch-all § 1983 claim, or a claim for attorney's fees under 42 U.S.C. § 1988; *see* Complaint ¶¶ 149, 152.  Plaintiffs seek compensatory and punitive damages on all their claims, as well as attorney's fees.[6]

---

[5]It appears that these two claims may be based on different statements uttered by Chief Moore and others on different occasions.

[6]The first and second causes of action cite the Fifth and Fourteenth Amendments to the United States Constitution, and the eighth cause of action alleges a denial of plaintiffs' rights under the First, Fourth, Fifth and Fourteenth Amendments.  At oral argument on the motion to dismiss, plaintiffs' counsel stated that plaintiffs were withdrawing their claims under the Fourth
(continued...)

## DISCUSSION

### I. Plaintiffs' Request for Discovery

In their memorandum of law filed in response to the Court's Rule 12(d) Order, plaintiffs state that summary judgment would be premature at this stage because there has been no discovery. Plaintiffs contend that they lack essential facts to defend against the motion (though they do not state what those facts are), and that the motion should therefore be denied under Rule 56(f)(1). *See* Dkt. #16 at 2.

Pursuant to Rule 56(f), the Court may deny summary judgment where the opposing party "cannot for reasons stated present by affidavit facts essential to justify the party's opposition." To support a Rule 56(f) application, the opposing party's attorney must file an affidavit describing: "(I) the information sought and how it will be obtained; (ii) how it is reasonably expected to raise a genuine issue of material fact; (iii) prior efforts to obtain the information; and (iv) why those efforts were unsuccessful." *Oneida Indian Nation v. City of Sherrill*, 337 F.3d 139, 167 (2d Cir. 2003), *rev'd on other grounds*, 544 U.S. 197 (2005). Whether to grant a Rule 56(f) motion lies within the discretion of the district court. *MM Arizona Holdings LLC v. Bonanno*, 658 F.Supp.2d 589, 596 (S.D.N.Y. 2009).

Plaintiffs' attorney has not submitted such an affidavit, and plaintiffs' request could be denied on that ground alone. Even aside from that, however, the Court finds that plaintiffs' arguments in this regard are not well taken. The Court's Rule 12(d) Order made clear that the basis for converting the motion was that both sides had referenced disciplinary proceedings against plaintiffs that were

---

[6](...continued)
and Fifth Amendments.

ongoing at the time of the filing of the complaint, and that have continued since then.  Plaintiffs, who are represented by separate counsel in those proceedings, presumably are well aware of the progress of the disciplinary proceedings, and they have not shown why they need discovery in this action as to those matters.  Plaintiffs' Rule 56(f) request is therefore denied.

## II. Due Process Claims

### A. General Principles

To prevail on a procedural due process claim, plaintiffs must first identify a property or liberty interest that is entitled to due process protection.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39 (1985).  "Property interests protected by due process ... are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Martz v. Village of Valley Stream*, 22 F.3d 26, 29 (2d Cir. 1994) (internal quotes omitted); *see also Flood v. County of Suffolk*, 820 F.Supp. 709, 712 (E.D.N.Y. 1993) (state law determines whether there is a property interest in employment).

To establish such an interest, the plaintiffs must show that they had "more than a unilateral expectation ... .  [They] must, instead, have a legitimate claim of entitlement" to the claimed property interest.  *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 216 (2006) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  *See also Preddice v. Callanan*, 92 A.D.2d 1040, 1041 (3d Dep't 1983) ("In our view, petitioner's allegations demonstrate a mere unilateral expectation of continued employment insufficient to trigger a due process guarantee to a pretermination hearing").

As the parties asserting due process rights, plaintiffs bear the burden of establishing that they had a legitimate property interest at stake. *Crull v. Sunderman*, 384 F.3d 453, 465 (7th Cir. 2004); *Watson v. University of Utah Med. Ctr.*, 75 F.3d 569, 578 (10th Cir. 1996); *see also Voorhis v. Warwick Valley Central School Dist.*, 92 A.D.2d 571, 571 (2d Dep't 1983) ("To establish a constitutionally protected property interest in a public employment position, a person must show more than a mere unilateral expectation of such an interest. He must establish a legitimate claim of entitlement to such position").

**B. Property Interest**

In support of their due process claims, plaintiffs advance several claimed property interests, most of which they contend are created by the collective bargaining agreement ("CBA") between the City and plaintiffs' union. Plaintiffs note, for example, that Article 15, § 9 of the CBA provides that "[m]embers [of the union] shall not be deprived of scheduled overtime for disciplinary or punitive reasons ... ." *See* Affidavit of John Koonmen (Dkt. #6) Ex. A at 28.

Plaintiffs also point to Article 23 of the CBA, which deals with "out-of-title work." "Out-of-title work" refers to work to which an officer is assigned, at a rank higher than the officer's regular rank. *See id.* at 39, § 23(1). Section 2 of Article 23 provides that when an officer performs out-of-title work, the officer shall be compensated on a per-diem basis, at the salary that he would receive if he were promoted to the higher rank. In addition, § 3(A) provides that "[o]fficers shall be assigned to out-of-title work [based on their] position on [the] current promotional list, work experience and quality of work." *Id.* at 39.

Plaintiffs allege that as a result of the charges against them, they have been deprived of opportunities to earn overtime pay. Plaintiff Ward, a sergeant, also alleges that after he pleaded not guilty to the internal charges, he was removed from an out-of-title assignment to work at the rank of lieutenant as a field training coordinator.

As a general principle, there is no constitutional right to overtime pay or similar benefits. *See Storman v. Klein*, No. 09 Civ. 0338, 2009 WL 1035964 (S.D.N.Y. Apr. 20, 2009) ("[C]ourts in this Circuit have found that 'disputes over overtime, over work assignments, over lunch and coffee breaks do not implicate the great objects of the Fourteenth Amendment.' In particular, '[e]very court in this circuit that has considered the issue of whether there exists a constitutionally protected property interest in overtime pay has answered in the negative.'" *Id.* at *12 (quoting *Boyd v. Schembri*, 94 Civ. 7119, 1997 WL 466539 at *3 (S.D.N.Y. Aug. 13, 1997), and *Cassidy v. Scoppetta*, 365 F.Supp.2d 283, 287 (E.D.N.Y. 2005)) (additional internal quotation marks omitted). *See also Rolon v. Henneman*, 517 F.3d 140, 148-49 (2d Cir. 2008) (police officer failed to allege unconstitutional deprivation of property, where he demonstrated no rules or understandings that proved he had a legitimate claim to overtime).

In *Dones v. City of New York*, No. 07 Civ. 3085, 2008 WL 2742108 (S.D.N.Y. July 9, 2008), for example, the plaintiff, a city police officer, had been suspended without pay based on five departmental charges, on two of which he was eventually found guilty. Granting summary judgment for the city, the court stated with respect to the plaintiff's due process claim that "[a]bsent extraordinary circumstances, courts in the Second Circuit have not recognized overtime, particular assignments, or the prestige of a given assignment as property interests protected by due process," and

that "Dones has not offered any evidence of a mutual expectation of overtime or any particular assignment." *Id.* at *7 (footnotes omitted).

In some circumstances, a CBA *may*–but will not necessarily–give rise to protected property rights. "We have repeatedly recognized that a collective bargaining agreement may give rise to a property interest in continued employment." *Ciambriello v. County of Nassau*, 292 F.3d 307, 314 (2d Cir. 2002) (citations omitted). *See also Danese v. Knox*, 827 F.Supp. 185, 190 (S.D.N.Y. 1993) ("courts have uniformly held that a collective bargaining agreement can be the source of a property right entitled to due process protection"). Typically, such interests are found in cases in which the CBA provided that employees could not be discharged or disciplined without "just cause," or some similar standard. *See, e.g.*, *Ciambriello*, 292 F.3d at 313.

Nevertheless, "not every contractual benefit rises to the level of a constitutionally protected property interest. It is neither workable nor within the intent of section 1983 to convert every breach of contract claim against a state actor into a federal claim." *Ezekwo v. New York City Health & Hospitals Corp.*, 940 F.2d 775, 782 (2d Cir. 1991) (internal quotation marks and alterations omitted). *See also Ciambriello*, 292 F.3d at 313 (while state law determines whether a CBA gives rise to a property interest, "federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause") (quoting *Ezekwo*, 940 F.2d at 782); *Danese*, 827 F.Supp. at 193 (concluding that plaintiffs, who asserted a property interest in sick leave under their CBA, were "attempting to turn what is essentially a contract dispute into a federal constitutional claim; this, of course, is impermissible").

Weg v. Macchiarola, 729 F.Supp. 328 (S.D.N.Y. 1990), is instructive in this regard. In Weg, a city employee who had been accused of wrongdoing was suspended, but eventually reinstated after the charges against him were dismissed. He then brought a § 1983 action against the city and city officials.

In his due process claim, the plaintiff alleged that the defendants' action deprived him of a property right by suspending him without a hearing, and then refusing to reinstate him to his position. He also asserted that the defendants' release of information to the press regarding his arrest and suspension, prior to a full adjudication of the charges against him, harmed his reputation and made it impossible for him to obtain other work in his field, thus depriving the plaintiff of a liberty interest as well.

On the defendants' motion for summary judgment, the court held that the plaintiff had failed to identify any protected property interest. The court said that the plaintiff had failed to show that he had a right not to be suspended, adding that the plaintiff's claim was "weakened by the fact that ... except for two brief periods, he received his pay on a regular basis during his suspension, and the pay that was withheld was eventually repaid to him." Id. at 337.

In addition, the court noted that the defendants had "provided the opportunity for a post-suspension hearing." Id. Even though no hearing was ever held (the charges against the plaintiff were eventually dropped, roughly four years after they were brought), "the opportunity for a hearing did clearly exist," and it appeared that much of the reason for the delay, and the failure to hold a hearing, was due to the parties' having engaged in negotiations to attempt to resolve the charges without a hearing. The court therefore concluded that "[t]here were opportunities for Weg to be

heard. He has presented no evidence that defendants denied him access to those opportunities, and, indeed, there is evidence that he acquiesced in the negotiations" that were part of the reason for the delay. *Id.*

Other district courts from within this circuit have reached similar conclusions. *See*, *e.g.*, *Henneberger v. County of Nassau*, 465 F.Supp.2d 176, 192-93 (E.D.N.Y. 2006) (dismissing due process claim by county employees, who asserted that they had a property interest in the compensation levels set forth in their CBA, on ground that "plaintiffs seek due process protection for an interest created solely by contract," and that plaintiffs were "'attempting to turn what is essentially a contract dispute into a federal constitutional claim'") (quoting *Danese*, 827 F.Supp. at 193); *Kennedy v. Lehman*, No. 03-CV-531, 2007 WL 2743457, at *7 (W.D.N.Y. Sept. 18, 2007) (granting summary judgment for county on county employee's due process claim, court stated that "[t]he collective bargaining agreement (CBA) at issue here did not create any contractual rights sufficient to form the basis for a due process violation," and that "[p]laintiff's claim that he had a protected property interest in earning overtime pay is also without merit"), *rev'd on other grounds*, 328 Fed.Appx. 16 (2d Cir. 2009).

Where courts *have* found a protected interest stemming from a CBA or some other contractual or non-statutory source, typically it is because the CBA, or the employer's explicitly stated policies, virtually guaranteed that the employee would enjoy some particular, significant benefit, or that the employee would not be disciplined without cause. *See*, *e.g.*, *Ezekwo*, 940 F.2d at 783 (although "not every breach of a contractual right rises to the level of a deprivation of property," on the facts of this case, the employer's "established practice" of awarding the position of Chief Resident to all third year

residents on a rotating basis, coupled with fact that plaintiff had "consistently had been informed that she would rotate through" that position, and her reasonable reliance on those assurances, "created a contractual right that rose to the level of a significant property interest that would be protected under state law"). *See also Dee v. Borough of Dunmore*, 549 F.3d 225, 231 (3d Cir. 2008) (plaintiff firefighter, who was suspended with pay, with no prior notice or opportunity to be heard, based on borough council's determination–which was later rescinded–that he had failed to complete two training requirements, had a protected property interest by virtue of state statute providing that a borough fireman could not "be suspended, removed or reduced in rank" except for one of six enumerated reasons, and because the CBA governing plaintiff's employment provided that borough council had the right to discipline employees for "just cause").

Applying these principles here, I find that plaintiffs' due process claim fails, on the ground that they have not identified any constitutionally protected property interest. With respect to overtime, all that the plaintiffs have alleged is that they were temporarily suspended *with* pay, and that during their suspensions, they were unable to earn overtime pay.

There are a number of reasons why that assertion cannot form the basis of a due process claim, under the circumstances of this case. First, the CBA here in no way guarantees that officers will receive overtime pay. Article 15 of the CBA sets forth detailed provisions concerning payment of overtime, but nowhere does it provide that any officer has an outright entitlement to overtime.

Plaintiffs' reliance on § 9 of Article 15 is misplaced. That section's provision that "[m]embers [of the union] shall not be deprived of scheduled overtime for disciplinary or punitive reasons" has no application here. Plaintiffs' inability to earn overtime pay was an inevitable, but incidental

consequence of their suspensions.  It would obviously be impossible for an officer to earn overtime during a period in which he is not working at all.  If plaintiffs' reasoning were adopted, then every disciplinary suspension, even one with pay, would automatically implicate a protected property interest due to the consequent loss of overtime opportunities.  I find no support for such a conclusion, either in the CBA or in any relevant case law.

Likewise, the provisions in Article 23 of the CBA, relating to "out-of-title work," do not guarantee that any officer *will* be assigned to such work; they simply provide that, when such work *is* assigned, it will be assigned according to certain criteria, and that the assigned officer will be compensated at the rate associated with the out-of-title, *i.e.*, higher, rank.  If an officer has been suspended, obviously he cannot be assigned out-of-title work, any more than he can earn overtime pay.  That is an inescapable consequence of being suspended, but it does not implicate any protected property interest in out-of-title work, since no such interest exists in the first place.

Again, it bears emphasis here that plaintiffs were suspended *with* pay.  The essence of their claims is that they were deprived of opportunities to earn *extra* pay, either by working overtime or by performing out-of-title work.  As explained above, however, the CBA does not give rise to a legitimate expectation of receiving such pay, and due process claims based on the loss of such additional pay or benefits, beyond an employee's base pay, have routinely been rejected by the courts. *See*, *e.g.*, *Zahrey v. City of New York*, No. 98-4546, 2009 WL 54495, at *28 (S.D.N.Y. Jan. 7, 2009) (noting that "courts have rejected ... claims for economic loss from missed raises, loss of private duty jobs, loss of promotional opportunities, and loss of over-time") (internal quotation marks omitted), *amended on other grounds*, 2009 WL 1024261 (S.D.N.Y. Apr. 15, 2009); *Deal v. Seneca County*, No.

07-CV-6497, 2008 WL 2020004, at *3 (W.D.N.Y. May 8, 2008) ("The law in this Circuit provides that nothing less than suspension without pay constitutes a protected property interest"); *Henneberger*, 465 F.Supp.2d at192-93 ("the denial of additional benefits allegedly due to plaintiffs under the CBA does not constitute the kind of deprivation that may give rise to a due process claim in the Second Circuit"); *Montefusco v. Nassau County*, 39 F.Supp.2d 231, 239 (E.D.N.Y 1991) (noting that plaintiff's "suspension by the District ... was with pay" and that he "remained employed by the District after the hearing panel dismissed the charges against him, and continues to be employed as a teacher in the District," court concluded that "there is no allegation raised in the amended complaint that Montefusco was deprived of any property interest"); *Weg v. Macchiarola*, 729 F.Supp. 328, 338 (S.D.N.Y. 1990) ("the Supreme Court has never held that a public employee, even one with tenure or its equivalent, has a right to a hearing prior to a suspension, particularly a suspension with pay").[7]

---

[7]This conclusion is consistent with reported cases from other jurisdictions as well. *See*, *e.g.*, *Brokaw v. Dallas Independent School Dist.*, No. 3:07-CV-0015, 2008 WL 4191512, at *8 (N.D.Tex. Sept. 11, 2008) ("Federal courts have held that a person' placement on administrative leave [with pay] does not amount to a deprivation of a protected property interest"); *Izquierdo v. Sills*, 68 F.Supp.2d 392, 420 (D.Del. 1999) (stating that police officer, who had been assigned to administrative duties pending outcome of investigation into citizen's complaint of excessive force, "had [no] property interest in working extra-duty and overtime assignments from which he was prohibited while on administrative duty," and that although "Izquierdo had a property interest in continued employment under the C.B.A.[,] ... the C.B.A. does not create a property interest in working extra-duty or overtime," because "[t]he C.B.A. governs extra-duty jobs, but does not guarantee them").

## C. The Process Afforded to Plaintiffs

Even if plaintiffs had alleged sufficient facts to show that they had a protected interest, their procedural due process claim would fail, because even assuming the truth of their allegations, it is clear that plaintiffs have received all the process to which they are due.

If a § 1983 plaintiff succeeds in showing the existence of a protected property or liberty interest, the next question is whether the plaintiff was given adequate notice and an opportunity to be heard, before being deprived of that interest. *See Ciambriello*, 292 F.3d at 321 ("As the Supreme Court [has] stated ..., 'We have described the root requirement of the Due Process Clause as being that an individual be given an opportunity for a hearing before he is deprived of any significant property interest'") (quoting *Loudermill*, 470 U.S. at 542 (additional internal quote omitted); *see also Flaim v. Medical Coll. of Ohio*, 418 F.3d 629, 635 (6th Cir. 2005) ("Notice and an opportunity to be heard remain the most basic requirements of due process").

To determine what process is constitutionally due, the Supreme Court has instructed that courts should generally balance three distinct factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest." *Gilbert v. Homar*, 520 U.S. 924, 931 (1997) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Assuming *arguendo* that plaintiffs have shown the existence of some protected property interest, they have been afforded constitutionally adequate notice and an opportunity to be heard. First, whatever private interest exists here, it is relatively weak. Plaintiffs were initially suspended

with pay, and were later allowed to return to work full time. Their chief complaint is that they have lost some opportunities for overtime or similar benefits. Without minimizing plaintiffs' subjective wish for those benefits, the private interest at stake here is clearly not as weighty as in cases involving terminations, suspensions without pay, or other relatively harsh or severe deprivations. *Compare Spinelli v. City of New York*, 579 F.3d 160, 173 (2d Cir. 2009) (stating that holding a hearing months after the suspension of plaintiff's gun dealer license could not be squared with due process, and noting that "the private interest was strong" in that case, since it involved plaintiff's ability to pursue her livelihood), *with Carcamo v. Miami-Dade County*, 375 F.3d 1104, 1105-06 (11th Cir. 2004) (holding that post-deprivation remedy was adequate, "especially in light of the fact that the private interest at stake here is so lacking in weight").

"Procedural due process is a 'flexible standard,' the parameters of which 'can vary ... depending on the private interest that will be affected by the official action' as compared to 'the Government's asserted interest, 'including the function involved' and the burdens the government would face in providing greater process." *Shao v. Mukasey*, 546 F.3d 138, 166-67 (2d Cir. 2008) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)) (additional internal quotes omitted). Given the weakness of plaintiffs' asserted interest, then, relatively modest procedures are all that would be required here, even if the City's interests are likewise weak.

It is undisputed that plaintiffs have been given notice of, and an opportunity to respond to, the charges against them. After plaintiffs were charged with misconduct in September 2007, they pleaded not guilty to all the charges against them. Through counsel (who is not the attorney who represents

them in this action), plaintiffs demanded a hearing pursuant to § 75 of the New York Civil Service Law and § 15.2 of the CBA.[8]

According to defense counsel in this action, and plaintiffs' attorney in the disciplinary proceedings, the two sides selected a mutually agreeable hearing officer, and testimony has been taken before him on several occasions in 2010, though at last report the proceedings had not yet concluded. It appears that difficulties in accommodating the schedules of the parties, their attorneys, the witnesses, and the hearing officer have contributed to the delay in conducting the hearing, which may be finished sometime in the fall of this year. *See* William G. Bauer Aff. (Dkt. #18-2) and Lawrence J. Andolina Aff. (Dkt. #17). There is no indication anywhere in the record, however, that plaintiffs have ever objected, in the disciplinary proceedings themselves, to any delay in those proceedings.

In support of their due process claims in this case, plaintiffs note that subsection 16 of Article 20, § 1 of the CBA provides that "[n]o removal or disciplinary proceeding shall be commenced more than eighteen (18) months after the occurrence of the alleged incompetence or misconduct complained of in the disciplinary charges, except that such limitations shall not apply where the incompetency or misconduct complained of and described in the charges would, if proved in a court of appropriate jurisdiction, constitute a crime." Dkt. #6-2 at 43. Plaintiffs contend that the disciplinary proceedings against plaintiffs did not commence for over two years after the underlying incident in June 2007.

_____

[8]Section 75(1) provides in part that an employee covered by that statute "shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section." Subsection 15.2 of § 1 of Article 20 of the CBA provides in part that "[a] member charged with misconduct and/or incompetence may elect to have his/her hearing held before a single Hearing Officer pursuant to Section 75 of the Civil Service Law." Dkt. #6-2 at 43.

There are several problems with that argument. First, this theory does not appear to be pleaded in the complaint; plaintiffs' due process claims allege only that defendants "arbitrarily and capriciously suspend[ed] plaintiffs based upon wholly false and stale allegations of wrongdoing," and that they "suspend[ed] plaintiffs without just cause or reason, and solely and exclusively for false, arbitrary and unreasonable grounds ... ." Complaint ¶¶ 114, 117. The focus of the complaint, then, is on the basis for plaintiffs' suspensions, not on any delay in bringing charges against them.

Second, whatever requirements may be imposed by the CBA, the CBA does not define what is required by due process. "The Constitution, not state law sources such as the CBA, determines what process is due." *Ciambriello*, 292 F.3d at 319.

From a constitutional perspective, I see no due process violation here. Although "there is a point at which an unjustified delay in completing a post-deprivation proceeding 'would become a constitutional violation,' the significance of such a delay cannot be evaluated in a vacuum." *FDIC v. Mallen*, 486 U.S. 230, 242 (1988) (quoting *Loudermill*, 470 U.S. at 547). In making this assessment, a court may consider a number of factors, including "the importance of the private interest and the harm to this interest occasioned by delay," and the reasons for the delay. *Mallen*, 486 U.S. at 242.

As explained, the private interest at stake here is relatively weak, since plaintiffs have been back on the job for some time now, and continued to receive their salaries even during their suspensions. For the same reason, the delay in the proceedings is currently causing plaintiffs little appreciable harm.

Furthermore, plaintiffs themselves appear to have consented to the delay. There is no indication that they have objected to the length of time that it has taken to complete the hearing, and it seems that the scheduling of the hearing has been jointly agreed to by plaintiffs' counsel and counsel for the City.

In addition, even assuming that the CBA's eighteen-month period for commencing a disciplinary proceeding bears upon the process that is due to plaintiffs, plaintiffs have not shown that this provision was violated. The CBA does not state that a *hearing* must begin within eighteen months, but only a "proceeding." While the latter term is not defined in the CBA, the apparent purpose of the provision that "[n]o removal or disciplinary proceeding shall be commenced more than eighteen (18) months after the occurrence of the alleged incompetence or misconduct complained of in the disciplinary charges" is to ensure that charges are not brought against an officer years after the incident or conduct giving rise to the charges. In the case at bar, the charges were brought against plaintiffs less than four months after the underlying incident, and as stated, the length of time that it has taken for the hearing to conclude appears to be a result of factors largely beyond defendants' control, and has been consented to by plaintiffs through their counsel in those proceedings.

Aside from the issues concerning delay, plaintiffs have not presented sufficient evidence to give rise to any genuine issue of fact concerning the alleged violation of their due process rights. The allegations that plaintiffs' suspensions were based on false grounds do not state a due process claim, since plaintiffs were not terminated or suspended without pay, and since they have been given the opportunity to defend against the charges against them. *See Cotton v. Jackson*, 216 F.3d 1328, 1330 (11th Cir. 2000) (holding that a plaintiff "fail[s] to state a procedural due process claim [for

- 21 -

reputational injury] ... [where] state remedies [are] available to provide Plaintiff with the opportunity for a name clearing hearing"). *See also Loudermill*, 470 U.S. at 544-45 (stating that "where the employer perceives a significant hazard in keeping the employee on the job [pending a hearing], it can avoid the [potential due process] problem by suspending with pay"); *Rosenstein v. City of Dallas*, 876 F.2d 392, 395-96 (5th Cir. 1989) (disclosing charges against a discharged employee does not create a liberty interest violation if employee is given post-termination opportunity to clear his name).

### D. Substantive Due Process

Plaintiffs also contend that they have stated a viable substantive due process claim. I disagree.

"Generally speaking, '[f]or state action to be taken in violation of the requirements of substantive due process, the denial must have occurred under circumstances warranting the labels "arbitrary" and "outrageous."'" *Kuck v. Danaher*, 600 F.3d 159, 167 (2d Cir. 2010) (quoting *Natale v. Town of Ridgefield*, 170 F.3d 258, 262 (2d Cir. 1999)). Plaintiffs have neither alleged facts nor presented evidence of such behavior on defendants' part. *See Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (where "all that the appellants ... alleged [we]re assertions of defamatory conduct to which they attach[ed] the label of extreme conduct violating the appellants' fundamental rights," district court was correct in dismissing plaintiffs' substantive due process claim), *petition for cert. filed*, 79 U.S.L.W. 3129 (Aug. 25, 2010).

Furthermore, "[w]here a specific constitutional provision prohibits government action, plaintiffs seeking redress for that prohibited conduct in a § 1983 suit cannot make reference to the broad notion of substantive due process." *Velez v. Levy*, 401 F.3d 75, 94 (2d Cir. 2005). Here,

plaintiffs' substantive due process claims are "either subsumed in [their] more particularized allegations, or must fail" because as a matter of law the conduct alleged is not sufficiently shocking, in a constitutional sense, to give rise to a substantive due process claim. *Id.*

## III. First Amendment Claim

Plaintiffs' third cause of action alleges that "defendants retaliated against plaintiffs for their refusal to follow unlawful instructions, their refusal to act as scapegoats and plead guilty to false charges on December 19, 2007, based on personal and bigoted animus and for filing a notice of claim against defendants on September 15, 2008 ... ." Complaint ¶ 120. Plaintiffs further allege that "defendants began a pattern of retaliating against plaintiffs that has resulted in plaintiffs' ostracizing, suspension, altered employment schedules, lost income and employment opportunities, lost furlough time, and other indignities and damages that continue to this day." Complaint ¶ 121.

In order to state a First Amendment retaliation claim, a public employee must allege that: (1) he engaged in speech that was constitutionally protected; (2) he suffered an adverse employment action; and (2) there existed a causal connection between the protected speech and the adverse employment action, such that it could be inferred that the speech was a "motivating factor" in the employment action. *See Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 152 (2d Cir. 2006); *Morris v. Linda*, 196 F.3d 102, 109 (2d Cir. 1996); *Spencer v. Holley Central School Dist.*, ___ F.Supp.2d ___, 2010 WL 3422076, at *2 (W.D.N.Y. 2010).

"Whether speech by a public employee is protected from retaliation under the First Amendment begins with this question: 'whether the employee spoke as a citizen on a matter of public

concern.' If a public employee speaks not as a citizen but instead pursuant to his or her 'official duties,' an employer's response to that speech does not violate the First Amendment." *Huth v. Haslun*, 598 F.3d 70, 73-74 (2d Cir. 2010) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418, 421, 424 (2010)).

"Whether or not speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record, and while motive surely may be one factor in making this determination, it is not, standing alone, dispositive or conclusive." *Sousa v. Roque*, 578 F.3d 164, 175 (2d Cir. 2009) (internal citation and quotation marks omitted). *See also Spencer*, ___ F.Supp.2d at ___, 2010 WL 3422076, at *2 ("Speech that is 'constitutionally protected' is that which takes place when one speaks, in the capacity of citizen, about a matter of public concern–that is, a matter of political, social or other concern to the community at large, as opposed to a personal matter") (citing *Garcetti*, 547 U.S. 410). "'Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide ... .' The heart of the matter is whether the employee's speech was 'calculated to redress personal grievances or whether it had a broader public purpose.'" *Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008) (quoting *Lewis v. Cowen*, 165 F.3d 154, 163-64 (2d Cir. 1999)).

In the case at bar, the speech relied on by plaintiffs is their refusal to accept defendants' plea offer, their not-guilty pleas to the disciplinary charges, and their filing of this lawsuit. *See* Plaintiffs' Mem. of Law (Dkt. #9) at 16. As to plaintiffs' speech concerning their pleas, I fail to see how that could constitute speech by plaintiffs, speaking as citizens, on a matter of public concern. That the underlying incident and the ensuing investigation received some attention in the local news media

does not mean that every utterance by the participants, having some connection to those matters, automatically falls into the protected category. *See Koch v. City of Hutchinson*, 847 F.2d 1436, 1448 (10th Cir. 1988) ("Media publicity of the dispute is not determinative of the question of whether Koch's speech was on a matter of public concern for First Amendment purposes"); *Egger v. Phillips*, 710 F.2d 292, 317 (7th Cir. 1983) ("the factors which determine whether a story is newsworthy" are not coterminous with "the factors which determine whether the communication has societal ramifications, and in any event, newspaper editors cannot decide the question for us").

Even assuming, *arguendo*, that the June 2007 incident, or even the officers' later pleas themselves were matters of public concern, that is not the same as saying that the pleas were "about" a matter of public concern. Plaintiffs are confusing speech that *is* (arguably) a matter of public concern with speech *addressing* a matter of public concern. In entering their pleas, plaintiffs could hardly be said to have been pursuing some "public purpose"; they were simply stating, on the record, their intent to contest the charges against them.

Furthermore, to the extent that entering a not-guilty plea to disciplinary charges could be characterized as speech "about" the incident giving rise to those charges, I find as a matter of law that plaintiffs spoke in their capacity as police officers, rather than as citizens. Notably, the charges against plaintiffs were not criminal charges, but internal charges of misconduct, brought by the RPD against four of its own officers. In the ordinary course of things, plaintiffs at some point had to enter a plea of guilty or not guilty. In doing so, they were acting, and speaking, as police officers, *i.e.*, as employees of the RPD, about internal RPD charges against them, rather than as citizens addressing some broader concerns. *Cf. Hannan v. City of Philadelphia*, 306 Fed.Appx. 735, 738 (3d Cir. 2009)

(police officer's "[p]leading not guilty to a [police board of inquiry] charge cannot, as a matter of law, constitute a petition for redress of grievances under the First Amendment," and was therefore not protected speech).

Plaintiffs' contention, in response to defendants' motion for summary judgment, that their filing of the complaint in this action is also protected speech, is flawed, first, for the obvious reason that the retaliation alleged in the complaint necessarily preceded the filing of the complaint. In addition, even if plaintiffs' filing of a notice of claim in September 2008 were treated as the "speech" in question, this claim would fail. A public employee cannot transform a personal grievance into protected speech simply by filing a lawsuit over the grievance. As the Second Circuit has recognized, "[t]o hold ... that filing a lawsuit alleging retaliation for non-protected speech would give rise to a First Amendment complaint ... would defy logic," and would allow a plaintiff to evade the protected-speech requirement altogether. *Ruotolo*, 514 F.3d at 188 (quoting, and affirming, district court decision dismissing claim).

The instant action, then, cannot fairly be viewed as speech addressing a matter of public concern. It was brought by plaintiffs to remedy perceived violations of their individual rights, arising out of a particular incident and internal investigation within the RPD. *See Altonen v. City of Minneapolis*, 487 F.3d 554, 559-60 (8th Cir. 2007) (district court did not err in concluding that plaintiff's lawsuit was not a matter of public concern, since "[t]he context and content of Altonen's lawsuit suggest[ed] that her primary motivation was her personal interest in obtaining access to her files, not to provide the public with information"). *See also Ruotolo*, 514 F.3d at 190 ("[a] public employee may not transform a personal grievance into a matter of public concern by invoking a

supposed popular interest in the way public institutions are run") (quoting *Boyce v. Andrew*, 510 F.3d 1333, 1343 (11th Cir. 2007)); *cf. Cotarelo v. Village of Sleepy Hollow Police Dep't*, 460 F.3d 247, 252 (2d Cir. 2006) (finding police officer's lawsuit to be a matter of public concern because his allegations concerned "discrimination problems generally and were not limited to instances affecting only [the plaintiff]").

## IV. Negligent Hiring, Training and Supervision

Although as pleaded, plaintiffs' fifth cause of action, which alleges that the City and the RPD "failed to adequately train and supervise its police officers in the proper handling of a PSS investigation," Complaint ¶ 131, does not cite § 1983 or any other federal statute or constitutional provision, plaintiffs now argue that they have stated a viable claim of negligent hiring, training and supervision under § 1983. *See* Plaintiffs' Mem. of Law (Dkt. #9) at 17.

Such a claim under § 1983 must be dismissed, however. A § 1983 claim based upon alleged negligence in hiring, training or supervision of municipal employees will not lie in the absence of an underlying constitutional violation. *See De Asis v. New York City Police Dep't*, 352 Fed.Appx. 517, 518 (2d Cir. 2009); *Segal v. City of New York*, 459 F.3d 207, 219-20 (2d Cir. 2006). Since plaintiffs have not shown any underlying constitutional violation, this claim fails.

## V. Claims under State Law

Plaintiffs' fourth through seventh causes of action are based upon state law. "In general, where the [plaintiffs'] federal claims are dismissed before trial, the state claims should be dismissed

as well." *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998). *See also Town of West Hartford v. Operation Rescue*, 915 F.2d 92, 104 (2d Cir. 1990) ("It is well settled that 'if the federal claims are dismissed before trial ... the state claims should be dismissed as well'") (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Since the Court has dismissed all of plaintiffs' federal claims, and this case has not progressed beyond its early stages, I decline to exercise the Court's supplemental jurisdiction over these claims under 28 U.S.C. § 1367, and plaintiffs' state law claims are dismissed without prejudice to any remedies that plaintiffs may have in state court. *See E & L Consulting, Ltd. v. Doman Industries Ltd.*, 472 F.3d 23, 33 (2d Cir. 2006); *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001).

## CONCLUSION

Defendants' motion to dismiss (Dkt. #4) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       October 27, 2010.